**CHICAGO, M. & ST. P. RY. CO. v. KENDALL, Governor, et al., and eight other cases.**

(District Court, S. D. Iowa, Central Division. October 28, 1921.)

Nos. 4157–4163, 4166, 4168.

1. **Constitutional law** ⬥⟶229(3)—**Taxation** ⬥⟶37—**Intentional assessment of different classes of property at different percentages of value held contrary to state law and federal Constitution.**

Code Iowa 1897, § 1336, and Code Supp. Iowa 1913, § 1305, requiring all property, with certain exceptions, to be valued for taxation at its actual value, prohibits inequality of treatment, and intentional, deliberate assessment of different classes of property at different percentages of the actual value constitutes unlawful discrimination, forbidden by the law, and hence by the federal Constitution.

2. **Courts** ⬥⟶282(3)—**Federal court may enjoin intentional assessment of different classes of property at different percentages of value.**

As the intentional deliberate assessment of different classes of property at different percentages of actual value, contrary to Code Iowa 1897, § 1336, and Code Supp. Iowa 1913, § 1305, is contrary to the national Constitution, it may be enjoined by a federal court.

3. **Taxation** ⬥⟶498—**Evidence held to show actual value of farm lands greater than assessed value.**

In a suit by railway companies to enjoin the assessment of their property at a greater percentage of its actual value than farm lands, evidence *held* to show that farm lands in Iowa, assessed at an average value of $76.77 an acre, has an average actual value of not less then $125 an acre.

4. **Taxation** ⬥⟶498—**Temporary injunction against unequal assessments granted only to extent convincingly established.**

Temporary injunctions will be granted, restraining the assessment of railroad property at a greater percentage of its actual value than other property, only to the extent that the evidence clearly and convincingly establishes the discrimination.

In Equity. Suits by the Chicago, Milwaukee & St. Paul Railway Company, by the Chicago & Northwestern Railway Company, by the Chicago, Rock Island & Pacific Railway Company, by the Wabash Railway Company, by the Minneapolis & St. Louis Railway Company, by the Chicago, Burlington & Quincy Railway Company, and by the Atchison, Topeka, & Santa Fé Railway Company against Nathan E. Kendall, Governor, and others; by the Dubuque & Sioux City Railway Company against George A. Burke, Auditor, and others; and by the Ft. Dodge, Des Moines & Southern Railway Company against Nathan E. Kendall, Governor, and others. On applications for temporary injunctions. Injunctions granted, to the extent stated in the opinion.

John N. Hughes, of Des Moines, Iowa, for plaintiff.

Ben J. Gibson, Atty. Gen., for defendants.

Before STONE, Circuit Judge, and WADE and MUNGER, District Judges.

PER CURIAM. The jurisdiction of the court is settled by decisions of the United States Supreme Court, some of which are: Ray-

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mond v. Chicago Traction Company, 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Home T. & T. Co. v. Los Angeles, 227 U. S. 278, 33 Sup. Ct. 312, 57 L. Ed. 510; Greene v. L. & I. R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Greene v. L. & N. R. R. Co., 244 U. S. 522, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Union Pacific R. Co. v. Weld County, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110.

[1, 2] The laws of Iowa require that railway property, farm lands, and all other property (with exceptions not here important) be valued for tax assessment at "actual value." Section 1305, Iowa Code Supplement 1913, and section 1336, Iowa Code 1897. This prohibits inequality of treatment. Intentional, deliberate assessment of different classes of the above property at different percentages of "actual value" results in the prohibited inequality of treatment, constitutes unlawful discrimination, is forbidden by the Iowa law, and therefore by the national Constitution, and can be prevented by the court.

The judges sitting are not in entire accord as to the proper bases to be used in arriving at actual values in these cases, but they are in complete agreement as to certain results. It is therefore thought unnecessary to set out the various processes of reasoning which have led to these conclusions, but necessary only to announce the results. In arriving thereat, every advantage, where the evidence was doubtful, every reasonable presumption has been determined in favor of the defendants.

[3] While no useful purpose could be served, in these hearings on temporary orders, in discussing the evidence, which is considerable in volume and complex in its nature, it is thought not out of place to state the following, among many important elements revealed by the evidence: Land values for the whole state for taxation in 1921, as adjusted by the Executive Council, are some $4,000,000 less than for previous years. There is no question but that land values in 1921 are lower than in 1920 and 1919, but we are all agreed that the actual market value of farm lands in Iowa is much in excess of $76.66 per acre, the amount fixed as its actual value for taxation purposes, as adjusted by the Executive Council.

The evidence in these cases embraces a statement of all recorded deeds given of Iowa land from January 1, 1920, to August 1, 1921 (except quitclaim deeds and deeds reciting a consideration only of $1 or of love and affection), and these deeds are from 97 of the 99 counties of the state, and include 33,686 transfers, covering 4,281,247 acres of land, and state the aggregate consideration of $919,001,673, or an average sale price of $214.66 per acre. The United States census report for 1920 shows the average value of all farm lands in Iowa to be $227 per acre. There was corroborative evidence of value of over $200 per acre in affidavits from competent witnesses in practically every county of the state. On the other hand, there were affidavits from competent witnesses in many counties that the lands were not worth more than the assessed value; but the evidence is very convincing that Iowa lands are worth considerably more than $76.77 per acre. The amount of this excess is not agreed upon, but we all agree that the

average actual value of farm lands for 1921 cannot be less than $125 per acre. Therefore the value fixed for taxation purposes does not exceed three-fifths of the actual market value.

We are all agreed that the value of the railway property for 1921, as fixed by the Executive Council, is much in excess of three-fifths of its value. The exact degree of this excess can be more accurately determined upon final hearing. For many years, extending back into pre-war times, the Executive Council has fixed the same value each year upon the railway property involved herein. This year such value on all railways of the state, including those under consideration herein, was increased by the Executive Council over $37,000,000. No one will seriously contend that the actual value of railways, measured by any standard, has increased in 1921 from 1920, or 1919, or 1918, or 1917. It is a matter of common knowledge that the future of the railways of the country is this year gravely uncertain, and that in 1921, with the rate problem, the wage problem, and shortage of freight and passenger business, the value of railways is at a low level.

Actual railway values increase and decrease from year to year, as do the values of other property, depending upon times and conditions. In cases of the complainants Chicago & Northwestern Railway Company, Chicago, Burlington & Quincy Railway Company, Chicago, Milwaukee & St. Paul Railway Company, Chicago, Rock Island & Pacific Railway Company, Minneapolis & St. Louis Railway Company, Dubuque & Sioux City Railway Company (Illinois Central Railway Company), and Ft. Dodge, Des Moines & Southern Railway Company, the evidence is convincing that the Executive Council intentionally and knowingly discriminated against each of such complainants, and in favor of farm lands, in fixing the assessed valuation of the property of such complainants, and that such discrimination has continued for years. They have therefore each made out a case requiring the issuance of a temporary injunctive order.

[4] Each of said complainants claims a much greater reduction than we have thought proper. While there is evidence tending to show that each of them may, on full and final hearing, be entitled to relief in a measure beyond that here accorded, we deem it highly proper, in these temporary orders, to restrict that relief to the measure which the evidence clearly and convincingly establishes. Such measure is, as to each of the just named complainants, except the Dubuque & Sioux City Railway Company (Illinois Central Railway Company), a reduction of the assessment made by the Executive Council to a value equal to 90 per cent. of the value assessed against each of them for the taxing year of 1920. As to the Dubuque & Sioux City Railway Company (Illinois Central Railway Company), a reduction will be made to a value equal to the value assessed against that property for the taxing year of 1920. The evidence fails to establish the right of the complainants Atchison, Topeka & Santa Fé Railway Company and the Wabash Railway Company to the relief now sought.

Order will be entered herein in accordance with the above determination, under proper conditions and bonds.