W. D. MENDENHALL ET AL., APPELLANTS, VS. W. B· DENHAM ET AL., APPELLEES.

### EQUITY PRACTICE—INJUNCTION TO RESTRAIN OFFICIAL ACTS.

It is well settled that a court of equity has no power by injunction to restrain public officers from performing any official act that they are by law required to perform.

Appeal from the Circuit Court for Lake county.

The facts of the case are stated in the opinion of the court.

*A. W. Cockrell & Son* for Appellants.

*Alex St. Clair-Abrams, Beggs & Palmer* and *J. B. Gaines,* for Appellees.

[Judge Barnes, of the First Circuit, sat in the place of Mr. Chief-Justice Mabry, who was disqualified.]

TAYLOR, J.:

The appellants, as residents, citizens, property owners and tax payers of the newly created county of Lake, on July 27, 1888, filed their bill in equity in the Circuit Court of said county against W. B. Denham, as chairman, and I. N. Withers, Jas. S. Mahoney, Jas. M. Owens, Sr., and H. J. M. Porter, as members of the board of county commissioners of said county, and against Henry H. Duncan, as Clerk of the Circuit Court, John P. Galloway, as sheriff, D. H. Yancey, as county judge, John H. Compton, as superintendent of schools and James C. Terry, as supervisor of registration, all of said county, whereby they allege, in substance, that under the provisions of Chapter 3771 laws,

approved May 27, 1887, that created the new county
of Lake out of territory taken from the two old coun-
ties of Orange and Sumter, three elections had been
held by order of the board of county commissioners
for said county for the purpose of establishing, by the
votes of the people, a permanent county seat. That
all three of said elections were bare of results; no one
place having received thereat a majority of all the
votes cast, as was requisite for a choice under the pro-
visions of said act. That a fourth election was called
and ordered by the board of county commissioners to
choose said county seat to be held on the 17th day of
July, 1888, and was held on that day. Divers frauds
and irregularities in the registration of voters prior to
said fourth election are charged; and in the voting of
persons for the place called Tavares who were not en-
titled to vote, and intimidation, bribery and fraudulent
prevention of qualified persons from voting are
charged, but in very general terms. It is further
charged that immediately after said election the said
Terry, as supervisor of registration, Yancey as county
judge, and Mahoney, as county commissioner, under
the provisions of section 30 of Chapter 3704, approved
June 7th, 1887, entitled "An act to provide for the
registration of all legally qualified voters in the several
counties of the State, and to provide for a general elec-
tion and for the return of elections," that provides
that the county judge, supervisor of registration, and
the president or other member of the board of county
commissioners, shall constitute the county canvassing
board for all general elections provided for by said act,
pretended to canvass what they claimed to be the re-
turns from the various precincts in said county, and
assumed to announce that the votes cast at said last
election numbered in all 2322, that of those the town

of Tavares received 1170; that Tavares received a majority of 18, and that Tavares is the county seat of said county. The bill further alleges that the board of county commissioners have not as yet received the returns of said election, or canvassed, or proclaimed the result thereof; but that complainants are informed and fear, and so charge, that said board will canvass the returns and declare said Tavares has received a majority of the votes cast at said election, and will declare, establish and maintain the said Tavares the county seat of said county unless restrained from so doing, and that they are informed and believe that the various county officers will remove the offices and public papers in their charge to, and keep the same at, Tavares, even without and contrary to the action of said board unless restrained. The bill prays for a temporary injunction restraining the defendants as public officers from doing any act in recognition, or in pursuance of, or under color of, authority derived from the result of said fourth election held on July 17th, 1888; from canvassing the returns, from declaring Tavares the county seat, from removing, or attempting to remove, the court house, jail, prisoners in charge of the sheriff, the county offices, records and archives from the place called Bloomfield, selected as alleged, by the board of county commissioners under the provisions of said Chapter 3771 as the temporary county seat, and from establishing, keeping or maintaining the same at Tavares; and that the returns from Tavares and Lane Park precincts may be adjudged and decreed to be illegal, null and void; that said Tavares be adjudged not to be the county seat; and that said fourth election be declared inoperative, illegal and void, and that said injunction, at the hearing, be made

perpetual. There is a prayer also for general relief. Temporary injunction was granted as prayed.

To this bill the defendants answered and demurred at the same time. Upon the hearing of the demurrer the court below sustained the same, dissolved the temporary injunction, and dismissed the bill; and from this order the complainants below appeal here.

Without undertaking to reconcile the serious conflict in the authorities as to whether a court of equity has any jurisdiction under any circumstances to entertain a bill involving a contest of an election held for the establishment of a county seat, or to pass upon the validity of the registration of electors, or legality of votes and return therein, and without undertaking to decide as to what is the proper remedy in such a case, or whether there is any remedy elsewhere than in the legislative department of the government for such a case as is made by the bill herein, we are clearly of the opinion of the demurrer interposed to the bill here was well taken, and the court below committed no error in sustaining it. And this, because, even if we should concede that a court of equity could under any circumstances entertain a bill whose purpose is to contest an election for the location of a county seat, the bill filed herein was entirely premature, and at the time when filed gave to the complainants no status whatever in a court of equity, and upon its face showed that they were not, then at least, entitled to the relief prayed. According to our construction of said Chapter 3771, creating and establishing Lake county, and providing for the location of its permanent county seat by election, the Legislature intended thereby to delegate to the board of county commissioners the entire supervision of the matter of the election prescribed as the means of making a choice; and conferred upon such

board the sole power of determining from the returns of the election to be held, whether or not such election had resulted in a choice of location. In other words, the board of county commissioners was, by said act, alone authorized to act as the county canvassing board of the aggregate returns from any election held under said act at the various precincts in said county. The county judge, supervisor of registration, and a member of the board of county commissioners who, under the provisions of Chapter 3704, composed the county canvassing board for all general elections, had nothing whatever to do with the canvass of the result of any election held under said special act for the location of the county seat. By said special act the board of county commissioners are required to provide for the holding of such special election, for the registration, by the proper officer, of all qualified electors; and, if the first and second elections did not result in any place obtaining a majority of all the votes cast, they were required to order or hold successive elections until a choice was made. It is clear, we think, that to the board of county commissioners alone was the authority delegated to ascertain and declare, from the returns of any such election, whether a choice of location had been made, and if not, then to order an election, or elections, until the choice made in the manner prescribed. Calaveras County vs. Brockway, 30 Cal. 325. This being true, it is well settled that the court of equity has no power by injunction to restrain public officers from performing any official act that they are by law required to perform. 2 High on Injunctions (3rd ed.), § 1311; State ex rel. Bloxham vs. Gibbs, 13 Fla. 55; Dickey vs. Reed, 78 Ill. 261; Willeford vs. State, 43 Ark. 62. The bill alleges that at the time it was filed the board of county commissioners

had not as yet received the returns of said fourth election, nor canvassed the same, nor ascertained therefrom whether such election had resulted in a legal choice of location or not, yet it prays that such board be restrained from performing the official act that they were required by law to do, viz: from canvassing the returns, and, necessarily, from ascertaining therefrom whether a choice of location had been made or not. It is evident, therefore, that, even though it be conceded that a court of equity could entertain and adjudicate such a contest of an election as is presented by the bill, the bill filed herein was premature, and the court below committed no error in sustaining the demurrer thereto and in the dismissal thereof. The decree is affirmed.