**PAXTON et al. v. OHIO FUEL SUPPLY CO. et al.**

(Circuit Court of Appeals, Sixth Circuit. March 12, 1926.)

No. 4431.

1. **Taxation** ⟲608(5)—**Property owner, who protested valuation, held not estopped from suing to enjoin collection, because he made no effort to prevent listing or to cause reappraisement of other property (Gen. Code Ohio, § 12075; Const. Ohio, art. 12, § 2).**

Under Gen. Code Ohio, § 12075, giving right to enjoin either levy or collection of illegal taxes, property owner, protesting against valuation, was not estopped from maintaining suit to enjoin collection of illegal tax, under Const. Ohio, art. 12, § 2, because of excess valuation as compared with other property, notwithstanding that, after valuation was determined by tax commission, plaintiff made no effort to prevent listing for taxation, or to cause reappraisement of such other property.

2. **Taxation** ⟲611(4)—**County auditors and state tax commission are not necessary parties to bill to enjoin collection of tax (Gen. Code Ohio, §§ 12076, 12077).**

Under Gen. Code Ohio, § 12077, requiring action to enjoin collection of taxes to be brought against officers whose duty is to collect auditors of counties wherein taxable property was located and state tax commission were not necessary parties, notwithstanding section 12076, relating to actions to enjoin levy.

3. **Taxation** ⟲608(5).

One injured by constitutional undervaluation of property of others for taxation need not take on himself burden of instituting proceedings to compel higher valuation.

4. **Taxation** ⟲611(8)—**Discrepancy in computing tax after enjoining collection of portion being public matter, opportunity to correct mistake will be given, notwithstanding failure to raise question.**

Discrepancy in computing portion of tax, on enjoining payment of balance, because of not considering necessity for higher rate on reduced valuation, while immaterial, if plaintiff is to bear its share of deficit in subsequent year, otherwise being a public matter, opportunity to correct mistake will be given, notwithstanding failure to raise question, and participation of both parties in agreed statement on which computation was based.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit by the Ohio Fuel Supply Company and the Ohio Fuel Gas Company against Hugh Paxton and others. Decree for complainants (1 F.[2d] 662), and respondents appeal. Affirmed without prejudice to reconsideration of discrepancy in decree.

Joseph O. Fritz, of Wooster, Ohio (Obed C. Billman, of Cleveland, Ohio, on the brief), for appellants.

Eagleson & Laylin, of Columbus, Ohio, for appellees.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Appeal from a final decree perpetually restraining the collection of the unpaid remainder of general taxes assessed by the authorities of Wayne county, Ohio, for the year 1922, against the property of appellees, both being Ohio corporations, the *Gas Company* having succeeded the *Supply Company*, in 1923, in the business of supplying natural gas to consumers in Ohio. For convenience we shall speak of the Supply Company as plaintiff.

Under the Constitution of Ohio all property is required to be taxed at its true value in money by a uniform rule. Const. Ohio, art. 12, § 2. The bill herein was filed June 19, 1923, against the respective treasurers of each of 38 counties of Ohio, alleging the final valuation by the state tax commission of plaintiff's property in Ohio (exclusive of real estate not used in the operation of its gas supply business) at an arbitrary amount in excess of its true cash value, and the apportionment and certification of the assessment to the tax authorities of the respective counties (and the levying of taxes accordingly) for the year 1922 upon plaintiff's property by the state and local authorities in the respective counties. The bill further alleged the existence of a systematic undervaluation of real estate, for purposes of taxation, in each of the counties involved, at not to exceed 60 per cent. of its true value in money, whereby the tax rate in those counties for 1922 was much higher than would have been required to produce the same revenue, if the real estate therein had been assessed on the average at its true value in money; that the boards of commissioners of said counties and the state tax commission, although fully advised of the undervaluations and inequalities, have knowingly and systematically permitted that condition to continue and grow worse from year to year; that as a result

thereof plaintiffs have been discriminated against, are denied the equal protection of the laws, and were about to be deprived of their property without due process of law, in violation of the federal Constitution as well as of the Constitution and laws of Ohio.

The trial below was of the case against the treasurer of Wayne county.[1] It is now admitted that the true value in money of plaintiff's property used in its operation in Wayne county for 1922 was but about 85½ per cent. of the valuation thereof made by the Ohio tax commission for that year. The *undervaluation* of real estate in the various counties of the state, as charged in the bill, is admitted. It is also admitted that the assessed valuation of real estate in Wayne county for that year was but 60 per cent. of its true value in money, and that the fact that such assessed valuation was grossly less than its sales value was known, or by the exercise of due diligence in the discharge of official duties could have been ascertained, by the county auditors and county commissioners thereof, and was a fact of common knowledge in that county at the time when the tax values of real estate were required by law to be determined for that year, and that plaintiffs are subjected to a higher rate of taxation than they would have been, had a uniform rate of appraisement been established, and that plaintiff's property was appraised at a higher valuation than was the property of other similar corporations in Ohio. As we understand the record, and wholly apart from the effect of the undervaluation of real estate generally, the entire tax leviable upon plaintiff's property in Wayne county was but $25,734.63, 60 per cent. of which is $15,440.-58. Plaintiff had paid to the treasurer of Wayne county (apparently shortly before December 31, 1922) the first one-half, viz. $15,049.49, of the taxes ($30,098.98) assessed against it for 1922, and was ready to pay whatever balance was just. The District Court required the payment of the balance of $391.09 as condition precedent to issue of final injunction.

It is admitted that plaintiff duly protested against the tentative valuation of its property for 1922 by the tax commission of Ohio, and, after the final valuation thereof had been fixed by the commission, duly filed its application therein for a review and correction thereof, on the ground that the same was *excessive and discriminatory as compared with the prevailing tax values of other prop-*

erty, and, after action thereon, filed motion for rehearing thereof, which was overruled, and that plaintiff, when paying to defendant treasurer of Wayne county the first one-half of the taxes on the property, in writing submitted to defendant the following protest and notice:

"The Ohio Fuel Supply Company protests against the valuation on which the annual taxes assessed against it are based, and that this is notice of its intention to sue to enjoin the collection of any greater portion of said taxes than that tendered herewith."

Upon the facts thus far stated, plaintiff would clearly be entitled to the general relief granted below. Cummings v. National Bank, 101 U. S. 153, 157, 25 L. Ed. 903 et seq.; Greene v. Louisville & Interurban R. Co., 37 S. Ct. 673, 244 U. S. 499, 512, 61 L. Ed. 1280, Ann. Cas. 1917E, 88 et seq., in connection with L. & N. R. Co. v. Greene, 37 S. Ct. 683, 244 U. S. 522, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; and Ill. Cent. R. R. Co. v. Greene, 37 S. Ct. 697, 244 U. S. 555, 61 L. Ed. 1309; Taylor v. L. & N. R. Co. (C. C. A. 6) 88 F. 350, 374, 31 C. C. A. 537.

Notwithstanding plaintiff's efforts to obtain reduction of its assessment and the payment under protest of the first installment, it is urged that plaintiff has forfeited its right to relief through acquiescence, laches, and estoppel, by reason of these conceded facts: After the valuation of plaintiff's property was determined by the tax commission at the rehearing, and until the filing of its suit to enjoin the *collection of the taxes,* plaintiff made no further effort to prevent its property being *listed for taxation.* It furnished to the taxing authorities of the subdivisions of Wayne county no other information, or other claim that its valuation was fixed by the tax commission at an unfair amount. Prior to the payment of the first half of its taxes plaintiff gave the *county auditor* and *budget commission* no information that its property was overvalued by the tax commission. It filed no complaint and "pursued no statutory course," and made no effort, by petition or otherwise, to cause the reappraisement of other real estate or property in the county or in the taxing subdivisions thereof in which plaintiff's property was listed. The budget commission of the county levied the taxes on the property therein at rates adequate to produce the funds certified to them by the authorities of the several subdivisions and no more. Unless plaintiff pays its taxes in full there will be deficits in the funds of each county subdivision (eight townships and two school districts)

---

[1] For opinion of the District Court, see 1 F. (2d) 662.

for current expenses and sinking funds, as well as for bond interest, which they would be unable to pay in full when mature.

[1] We see no merit in this defense. The tax being illegal, suit in equity by injunction was maintainable under the express provision of O. G. C. § 12075, which gives right to enjoin either levy or collection. Cummings v. National Bank, supra, at page 157; Stephan v. Daniels, 27 Ohio St. 527, 535, 536; Cincinnati v. James, 44 N. E. 925, 55 Ohio St. 180; Manning v. Lockwood, 113 N. E. 661, 94 Ohio St. 85. In the Cummings Case, which arose under the provision of the Ohio Constitution here involved, it was held (pages 157, 163) that, independently of the statute, under a condition such as exists here, relief could be had in equity, and that complainant having paid the tax which was "its true share of the public burden" was properly awarded injunction against the remainder. See, also, Greene v. Louisville & Interurban R. Co., supra; Cincinnati v. James, supra.

[2] Nor are we impressed by the contention that by virtue of O. G. C. § 12076, the auditors of the several counties and the state tax commission were necessary parties to a bill to enjoin the *collection* of the unconstitutional portion of the tax. That section relates exclusively to actions to enjoin *levy*. Section 12077 provides that actions to enjoin *collection* must be brought against the officers whose duty it is to collect.

Upon the conceded facts, the county taxing officers presumably knew of the systematic practice of purposeful undervaluation of real estate generally, and the record does not indicate a belief or reason for belief that plaintiff's property was also undervalued. We find nothing in the record to indicate that any further notice plaintiff might have given would have caused the county taxing authorities voluntarily to change the prevailing system of undervaluation.

[3] We think the trial judge correctly concluded that the taxing officers would have had opportunity, had they so desired, to increase the rate, so as to meet the legitimate demands for the ensuing year. It is not plaintiff who is responsible for the impecunious condition of the county subdivisions resulting from the failure to collect the illegal assessment in question. Plaintiff in no way encouraged or profited by the undervaluation. No reason is perceivable for requiring one injured by

an unconstitutional system of tax valuation to take upon himself the burden of instituting proceedings to compel a higher valuation. "The remedy of reassessment appears to be a public, not a private remedy." Greene v. L. & I. R. Co., supra, at page 521 (37 S. Ct. 682). It seems clear that plaintiff is not estopped from maintaining its suit to enjoin collection. Counterman v. Dublin, 38 Ohio St. 515, 517, 518; Lewis v. Symmes, 56 N. E. 194, 61 Ohio St. 471, 487, 488, 76 Am. St. Rep. 428. Nor was plaintiff called upon formally to threaten suit, in advance of maturity and payment of the first installment of tax.

As to the computation of plaintiff's share of the tax: It is obvious that the payment by plaintiff on its reduced valuation (about $904,000) at the rate of taxation originally assessed against the valuation of $1,750,600, did not meet plaintiff's full share of the public burden, for the simple reason that the reduced total valuation of property on the tax roll, thereby caused, necessitated a higher rate of taxation. Plaintiff's payment apparently lacked several hundred dollars of its full share.[2]

[4] The use by the court of the 60 per cent. basis, without more, was perhaps due to certain language in the agreed statement of facts; but the discrepancy above mentioned is immaterial, if plaintiff is to bear or has borne on the roll for a subsequent year its share of the deficit referred to. Otherwise the discrepancy appears material, and, this being a public matter, we should deem it our duty to give opportunity to correct the mistake, notwithstanding defendant's failure to raise the question and the participation of both parties in the agreed statement referred to.

The decree of the District Court is affirmed, but without prejudice to reconsideration of the discrepancy mentioned (or opportunity therefor), if application for the same be made.

---

[2] In the syllabus of the Cummings Case it is said that "the appropriate mode of relief * * * is, upon payment of the amount of the tax which is equal to that assessed on other property, to enjoin the collection of the illegal excess." And cf. Greene v. Louisville & Interurban R. Co., supra, where "no criticism" was made "as to the particular relief granted by the final decrees." Page 503 (37 S. Ct. 675). There is nothing in these citations which we think conflicts with our conclusion just stated.