## WESTERN UNION TELEGRAPH CO. v. TAX COMMISSION OF OHIO et al.

## AMERICAN TELEPHONE & TELEGRAPH CO. v. SAME.

District Court, S. D. Ohio, E. D. July 28, 1927.

Nos. 465, 468.

1. **Courts ⬀282(3)—Suit to enjoin certification by state tax commission of assessment as discriminatory raises "federal question" (Const. Amend. 14).**

Suit to enjoin a state tax commission from certifying values of complainant telegraph company's property in the state to the auditors of the various counties in proportion to the amount of properties in such counties on the ground of discrimination, in violation of Const. Amend. 14, raises a "federal question," within equity jurisdiction of federal court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Federal Question.]

2. **Taxation ⬀319(2)—Tax commission's fixing of values for taxation is "administrative act," but determination of property subject to taxation is "judicial act."**

Fixing of values for taxation by state tax commission is exercise of administrative power, but determination by commission as to whether property is subject to taxation is exercise of judicial power.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Administrative; First and Second Series, Judicial Act.]

3. **Taxation ⬀495—Appeal from Ohio tax commission to court of common pleas is proceeding in error, and court in reviewing determination acts judicially as well as administratively (Gen. Code Ohio, § 5611—2).**

Appeal from final determination of state tax commission to court of common pleas under Gen. Code Ohio, § 5611—2, is a proceeding in error, and the court, in reviewing such determination, acts in judicial as well as administrative capacity, and the action of the commission in fixing value at the true value in money of the property taxed is, in so far as unlawful discrimination is concerned, the final administrative act.

4. **Taxation ⬀498—Telegraph companies were not required to defer suit to enjoin discriminatory assessments until after certification by tax commission to county auditors and entry of tax charges on duplicates (Gen. Code Ohio, §§ 5613, 12075; Const. Ohio, art. 12, § 2; Const. U. S. Amend. 14).**

Telegraph companies were not required to defer suit in federal court to enjoin state tax commission from certifying values of their properties within the state to the auditors of the various counties, brought on ground of discrimination by means of systematic undervaluation of other property in the state, in violation of Const. Ohio, art. 12, § 2, and of Const. U. S. Amend. 14, where complainants' property was assessed at full value as required by Gen. Code Ohio, § 5613, until after certification and entry of tax charges on the duplicates of the respective counties, and then avail themselves

of the right of action under section 12075; act of certification and of placing valuation on various tax duplicates and making of necessary extensions under sections 5448–5615 being merely ministerial duties.

**5. Taxation ⬤⟺498—Legal remedy must be clearly adequate to exclude equity jurisdiction to enjoin discriminatory tax assessment.**

Whether federal equity court has jurisdiction to enjoin alleged discriminatory state tax assessment depends on the adequacy of the remedies at law open to complainants, and adequacy of legal remedies must be clear.

**6. Taxation ⬤⟺498—Taxpayer's statutory right of appeal to court from tax assessment or to pay tax and sue to recover it held inadequate to bar equitable remedy. (Gen. Code Ohio, § 5611—2; Const. Ohio, art. 12, § 2; Const. U. S. Amend. 14).**

Right under Gen. Code Ohio, § 5611—2, to have tax assessment reviewed on appeal to court of common pleas in county where the largest part of taxpayer's property is situated, on which appeal taxpayer cannot raise question of discriminatory assessment in violation of Const. Ohio, art. 12, § 2, or of Const. U. S. Amend. 14, or right in the alternative to pay the tax and sue collecting officers to recover back what they unlawfully exacted, *held* inadequate to prevent equitable relief by injunction.

**7. Courts ⬤⟺262(2)—Availability of equitable remedies in state court is immaterial on issue of federal court's jurisdiction, where it has jurisdiction for diversity of citizenship and federal questions.**

Where federal District Court, because of diversity of citizenship, requisite jurisdictional amount, and alleged violation of Const. Amend. 14, has jurisdiction of suit to enjoin certification of value of telegraph companies' property by state tax commission to various county auditors, it is immaterial, on issue of federal court's jurisdiction, whether there is available to complainants the right of an equitable action in the state courts; party aggrieved having right to choose the forum in which he will assert his claim.

**8. Injunction ⬤⟺74—Mandamus ⬤⟺71, 72— Neither injunction nor mandamus lies against executive officer as respects discretionary duties, but purely ministerial acts are subject to such control.**

Neither injunction nor mandamus will lie against an executive officer to control him in discharging an official duty requiring the exercise of judgment and discretion, but such officers are subject to control of courts in so far as their purely ministerial acts affect the rights of citizens.

**9. Taxation ⬤⟺498—Unjust discrimination in state taxation of telegraph companies' property may be enjoined by federal court (Const. U. S. Amend. 14; Const. Ohio, art. 12, § 2; Gen. Code Ohio, § 5613).**

Federal District Court may enjoin certification by Ohio state tax commission of values of telegraph companies' property in the state to the auditors of the various counties in proportion to the amount of properties in such counties for purposes of taxation on ground of discrimination in violation of Const. Amend. 14, and Const. Ohio, art. 12, § 2, in that complainants' property is assessed at full value as required by Gen. Code Ohio, § 5613, while other property in state is assessed at not exceeding 75 per cent. of its value, and an injunction will therefore issue restraining tax commission from certifying more than 75 per cent. of the amount found by it to be the value of such property, in view of sections 1465—33, 5446, 5448, 5579, 5611—1, 5612–5615.

Hickenlooper, District Judge, dissenting.

In equity. Suits by the Western Union Telegraph Company against the members of the Tax Commission of Ohio and others, and by the American Telephone & Telegraph Company against the Tax Commission of Ohio and others. On plaintiffs' motion for preliminary injunction. Motions granted.

Ireton & Schoenle, of Cincinnati, Ohio, and Francis R. Stark, Francis N. Whitney, and Samuel C. Bowman, all of New York City, for Western Union Tel. Co.

Maxwell & Ramsey, of Cincinnati, Ohio, A. E. Holcomb, of New York City, and Joseph S. Graydon, of Cincinnati, Ohio, for American Telephone & Telegraph Co.

Edward C. Turner, Atty. Gen., and Virgil H. Gibbs, Sp. Counsel, of Columbus, Ohio, for defendants.

Before MOORMAN, Circuit Judge, and HICKENLOOPER and HOUGH, District Judges.

HOUGH, District Judge. The complainants are New York corporations, and the bills allege diversity of citizenship and unconstitutional action and threatened action on the part of the tax commission of Ohio, contra to the guaranties contained in the Fourteenth Amendment to the Constitution of the United States, and the uniformity clause of the state Constitution (article 12, § 2).

The cases have been submitted to this court, constituted under the provisions of section 266 of the Judicial Code (Comp. St. § 1243), upon the bills, the answers of the tax commission of Ohio, and the proof, and upon the application of the complainants for the issuance of preliminary injunctions to supersede temporary restraining orders heretofore granted, and the application of the defendant tax commission, raised both by motion and answer, to dismiss the bills.

The specific injunctive relief sought, is to enjoin and prevent the tax commission from certifying the values of complainant's property in Ohio, found by it upon hearing and rehearing to be subject to taxation, and of

definite and specific values, to the auditors of the various counties in the state, in proportion to the amount of the properties in such counties.

The complainants attack the amount of valuation only, raising no question that the property so valued and subsequently to be assessed does not have its situs for taxation in Ohio and is not liable to taxation here. This attack upon the valuation is presented in a twofold aspect: (1) That such property has been overvalued; and (2) that other property throughout the entire state is systematically valued at less than its true value in money, and that the valuation of complainant's property is therefore discriminatory and results in imposing an unequal and illegal burden of taxation upon complainants, in violation of the federal and state Constitutions. No tax has yet been assessed and none could be assessed until the valuation is apportioned and certified to the county auditors; and manifestly no tender has been made of taxes admittedly to become due.

In the year 1910 and the years following, the Legislature of Ohio made some radical changes in the taxing machinery of the state and in the taxing personnel thereof. Under the executive branch of the state government, it created the Ohio tax commission, and clothed it with plenary powers, as appears by sections 1465—1 to 1465—36, inclusive, of the General Code of Ohio. In section 1465—33 it is provided that "all powers, duties and privileges imposed and conferred upon any state board, * * * or any power or duty theretofore conferred upon any state or county officer or board, which power and duty by such act was conferred upon such commission, is hereby imposed and conferred upon the commission created by such act. * * *"

The taxation machinery proper is dealt with in sections 5320 to 5773, inclusive, of the General Code. And in section 5579 it is provided that, "in addition to all other powers and duties vested in or imposed upon it by law, the tax commission of Ohio shall direct and supervise the assessment for taxation of all real and personal property in the state. County auditors shall, under the direction and supervision of the tax commission of Ohio, be the chief * * * assessing officers of their respective counties, and, * * * shall list and value real and personal property for taxation, within *. * * their respective counties, except as may be otherwise provided by law. There shall * * * be in each county, a board to hear complaints and revise assessments of real and personal property for taxation, which shall be known as the county board of revision."

And in section 5610 it is provided that "an appeal from the decision of a county board of revision may be taken to the tax commission of Ohio. * * *"

The assessment of telegraph and telephone companies' property for taxation is made the duty of the tax commission itself under the authority of section 5446, General Code.

Its valuation on finding of liability of property for taxation, whether in case of an original valuation or other original proceedings of such board, or an appeal from the county board of revision, is final and conclusive for the current year (section 5611—1, General Code), unless reversed, vacated, or modified, as provided in the next section. Section 5611—2, General Code, confers jurisdiction upon the court of common pleas by petition in error, for the purpose of obtaining a reversal, vacation, or modification of the final determination of the tax commission, and further provides that "no determination of the tax commission as to the value of property for taxation shall be reversed, vacated, or modified unless it is shown by clear and convincing evidence that the value of the property, as determined by the tax commission, is not the true value in money of such property."

By section 5613, General Code, all the property in the state comes under the jurisdiction and consideration of the tax commission, to determine whether or not all or any class of that property has been listed at its true value in money, and it may increase or decrease the aggregate value of the real property or of the personal property, or any class of real or personal property, in any county, township, city, village, or taxing district, by such rate of per cent. or by such amount as will place such property on the tax list at its true value in money, *to the end that each and every class of real and personal property shall be listed and valued for taxation by an equal and uniform rule at its true value in money.*

It is made the duty of the respective county auditors, upon the final certifications by the tax commission to them, to place the values upon the county tax duplicate. Sections 5448 and 5615, General Code.

It was apparently the intent of the Legislature that no state judicial action be permitted to interfere with the activities of the tax commission, except as provided in section 5611—2, General Code, as it has provided in section 1465—31 that "no injunction shall

issue sustaining or staying any order, determination, or direction of the commission * * * required by law to be taken in pursuance of any such order, determination or direction, but nothing herein shall affect any right or defense in an action to collect any tax or penalty."

This later legislation repealed in part, at least, section 12075, General Code, which had been upon the statute books for many years, and provided: "Common pleas * * * courts may enjoin the illegal levy or collection of taxes and assessments, and entertain actions to recover them back when collected, without regard to the amount thereof, but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

The legislative taxation structure confers upon the tax commission the power and duty to value originally public utilities property; to find the ultimate value of the property of specific individuals who have remonstrated and appealed the question of value to the commission; and, finally, upon an abstract of the real and personal property transmitted to it by the various county auditors, under section 5612, to pass upon the various classes of property in the respective taxing districts, and, under section 5614, to increase or decrease any of the classes of real or personal property, to the end, as provided in section 5613, that "each and every class of real and personal property shall be listed and valued for taxation by an equal and uniform rule at its true value in money." The commission, therefore, is the final arbiter and valuer of all the property in the state, of whatsoever nature, subject as we have seen to the review provided in section 5611—2, General Code.

The answers make issue on the questions of overvaluation of complainant's property and discrimination and in resistance of the application for injunction raise three questions; namely: (1) The jurisdiction of the court as such; (2) that the complainant's right of action has not reached a justiciable stage; (3) and that an adequate remedy at law exists.

1. The bills allege diversity of citizenship and the requisite jurisdictional amount involved, and, outside the bare statement of jurisdictional amount, the bills on their face show that subject to proof the requisite jurisdictional amounts are involved.

[1] Upon the question of discrimination or systematic discriminatory valuations on the part of the taxing authorities, that action is assailed as contravening the federal Constitu-tion which presents clearly a federal question within the equity jurisdiction of a federal court as such and one which that court may hear and determine. Connecting Gas Co. v. Imes (D. C.) 11 F.(2d) 191; Taylor v. L. & N. R. R. Co. (C. C. A. 6) 88 F. 350; Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903; Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; L. & N. R. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Chicago G. W. Ry. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183; Risty v. C., R. I. & P. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; Railroad & Warehouse Com. of Minnesota v. Duluth St. Ry. Co., 47 S. Ct. 489, 71 L. Ed. 807 (decided April 11, 1927).

2. Is there a remedy judicial in form, to be entertained by the courts, namely, Has the justiciable stage arrived?

[2] The solution of this question will call for some inquiry relating to the construction and interpretation of section 5611—2, General Code. It is conceded that the complainants did not avail themselves of the procedure provided in that section, and we think that, inasmuch as a hearing and a rehearing had taken place in respect to the actual values of complainants' property, under the clear and unambiguous language used in section 5611—2, General Code, it must also be conceded that the tax commission has taken its final action in respect to those values for the current year. That the tax commission is clothed with administrative powers is beyond dispute. The fixing of values for taxation is essentially administrative. But it would also seem that that body is clothed with some powers judicial in nature. The determination by it of whether or not property is subject to taxation comes within the latter class. The author of the opinion in the case of Stanton v. Tax Commission, 114 Ohio St. 658, 151 N. E. 760, when that court had before it and sustained the constitutionality of section 5611—2, General Code, considered the tax commission to be a board having quasi judicial powers, although that court did not have before it nor did it decide that point.

[3] The appeal to the common pleas court under section 5611—2, General Code, is a proceeding in error, both under the express language used in the act itself, and by force of the decision of the court of last resort in the state. Floyd v. Light & Heat Co., 111 Ohio St. 57, 144 N. E. 703. The latitude of the appeal seems to include the determination of whether given property is subject to taxation,

and whether the value finally determined by the tax commission is the true value in money. The court is given the power of reversing, vacating, or modifying the findings of the tax commission. The determination of whether or not the property is subject to taxation is a legal question, and the appeal thereof under this section is an appeal to a judicial tribunal. Again, the appeal from the finding of the commission upon the value of the property, in so far as it is subject to reversal by the court of common pleas by proceedings in error, and subject to be taken to the higher courts, and where the common pleas court exercises its jurisdiction by either affirming or reversing and remanding the action of the tax commission, would seem to be a judicial proceeding addressed to a judicial tribunal. The power to modify the finding of the commission as to value given to that court places in the court the right to exercise a judgment which is a substitute with controlling effect to the judgment of the tax commission. This latter aspect of the jurisdiction of the common pleas court appears to be purely administrative. Thus we find in the appeal provided by section 5611—2, General Code, elements of jurisdiction that are clearly judicial, and it cannot be said that the court under the provisions of the statute is clothed only with the exercise of administrative powers. City Railway Co. v. Beard (D. C.) 283 F. 313. Moreover, no language in the act providing for review can be construed to include the question of systematic discrimination and uniformity and inequality of tax valuation. We are therefore constrained, in view of the language of the statute limiting the courts to a determination of the true value in money of the property, to hold that the review provided for is not purely administrative, but has uneraseable judicial elements, or at least to say, which is sufficient for the purposes of this case, that, whatever be the character of the review, the state courts have no power under the statute to determine whether an assessment is discriminatory, and, being so limited in their powers, the action of the commission in fixing the value at the true value in money of the property, is, in so far as unlawful discrimination is concerned, the final administrative act.

In the Beard Case referred to, it was held by Judge Sater, that the common pleas court was a judicial tribunal, acting judicially and not administratively, and that, when the commission had finally acted on the valuation, the justiciable stage was reached. Ohio Fuel Supply Co. v. Paxton (D. C.) 1 F.(2d) 662, later considered by the Court of Appeals,

Sixth Circuit, 11 F.(2d) 740, seems to recognize the correctness of this ruling. In the Bacon Case, 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538, the statute gave to the party aggrieved, by the order of the Public Service Commission, the right to take the case to the Supreme Court by appeal, and that court was given the same powers therein that it had over other appeals, by which it might reverse or affirm the judgment, orders, or decrees of the board, or remand to the board upon mandates, in accordance with the law or equity of the case, and the board in that event was required to enter a judgment or decree in accordance with such mandate, and Mr. Justice Holmes writing for the court said that it was apparent that the statutes of the state did not attempt to confer "legislative powers upon the court"; that they only provided an alternative and more expeditious way of doing what might be done by a bill in equity; and that, when the Public Service Commission had acted, the justiciable stage had been reached and the party aggrieved was free to assert his right in a federal court of equity. The court differentiated that case from Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, where, under the Constitution of the state of Virginia, the courts were clothed with administrative powers, and in which it was held that, before bringing its bill in equity, the complainant should have exhausted the administrative procedure and "made certain that the officers of the state would not undertake to enforce an unconstitutional rule." The difference between the Prentis Case and other cases involving the same principle, such as Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288, Keokuk & Hamilton Bridge Co. v. Salm et al., 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496, and First National Bank of Greeley v. Board of Com'rs of Weld County, Colo., 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784, and the case at bar, is clear, because there is no power in the courts to relieve complainants, if their claims be true, of an unconstitutional discrimination.

In Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908, the Supreme Court of Pennsylvania had interpreted the statutes of the state as withholding from the courts the power to determine questions of confiscation, according to their own judgment, when the action of the Public Service Commission came to be considered on appeal in connection with the fixing of rates; and hence it was held that the duties of the courts upon appeals were judicial in character and not legislative, and that, aft-

er the Public Service Commission had finally acted, the right of appeal to the federal courts upon established judicial grounds was available to the party who was aggrieved.

In Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878, suit was brought to restrain the collection of taxes upon the ground that there had been a systematic undervaluation of the property, resulting in an unjust discrimination against complainant. Its property was assessed by the board of equalization and assessment, which equalized the assessments of other properties. The state statute provided for a writ of error to the Supreme Court to review the action of the board on a record prepared by it. The Supreme Court said, "A remedy in the state courts only has been held not to be enough"; and, furthermore, that the most that the state court could do, would be to set aside an excessive valuation, and remand the matter to the same board to try again, "which is hardly satisfactory, if the board is seeking to evade the law"; and it was held that the justiciable stage had been reached.

[4] Is it necessary for the complainants to defer action to enjoin until after certification and the entry of the tax charges on the duplicates of the respective counties, and then to avail themselves of the right of action under section 12075, General Code? We believe this not to be necessary. The final determination of the value of their property for taxation fixes the status of their property in its relationship to the value of all other property upon the question of uniformity of value, and, so far as the question of discrimination is concerned, is the crux of the matter. The act of certification by the commission, the act of placing valuations upon the various tax duplicates by the county auditors, the subjecting of the amounts of valuation to the appropriate rates, and the making of the clerical extensions in laying the tax charge, are all duties imposed by law, ministerial, clerical, and mandatory, on the part of the appropriate officers. Western Union Telegraph Co. v. Poe (C. C.) 61 F. 449; Sanford v. Poe (C. C. A.) 69 F. 546, 60 L. R. A. 641. See, also, Hammond v. Winder, 100 Ohio St. 433, 126 N. E. 409, 24 A. L. R. 318. In Telegraph Co. v. Poe, supra, Circuit Judge Taft had this to say: "It is first said that the injunction sought is premature, because against the valuers, and not against the collecting officers. * * * What is here sought to be enjoined is the certificate by the board of appraisers to the county auditors of the amounts to be assessed against plaintiff. The auditors are then, by law, required to place the same upon the tax duplicate, and deliver the duplicates to the county treasurers as warrants for the collection of the taxes. The duties of the county auditors and treasurers in this matter are wholly ministerial. The law reposes in them, no discretion whatever, to reduce or modify the assessment. * * * "

[5, 6] 3. Whether there is equity jurisdiction to grant the relief sought depends initially upon the adequacy of the remedies at law open to the complainants. This we have touched upon in the discussion of the question just disposed of; but we have thus far failed to note that, if the property of the taxpayer is situated in several counties of the state, the statute gives him the right to appeal to the common pleas court in the county wherein the largest part of his property is situated and have determined in that court whether the assessment made by the commission is on the basis of the true value in money of the property. An alternative, we assume, is to pay the taxes and sue the collecting officers to recover back what they unlawfully exacted. Are these remedies adequate, leaving out of consideration the test of equity jurisdiction as stated in Risty v. Chicago, etc., Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641, namely: "The inadequacy of the remedy on the law side of that [federal] court and not the inadequacy of the remedies afforded by the state courts."

Under the first, as we have seen, complainants cannot raise the constitutional question of a discriminatory assessment, but may only complain of an assessment in excess of the actual value of the property in money. Thus the very ground on which complainants are attacking the action of the commission is by the statute foreclosed to them in the remedy which has been provided through the instrument of the common pleas and other courts. The other remedy of paying the excess tax and suing to recover it back, does not, we think, afford that adequacy of remedy that will justify a court of equity in declining to interfere with an unlawful act. In that case it is not clear that there would not be a multiplicity of suits; and, even if it were permissible and practicable to bring a single suit against all the tax collectors, there would certainly be difficulties in fixing values and apportionments among the taxing units, and, as pointed out in Wilson v. Ry. Co., 263 U. S. 574, 44 S. Ct. 203, 68 L. Ed. 456, Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051, and many other cases, the adequacy of the remedy must be clear.

[7] In Dawson v. Kentucky Distilleries &

Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638, it was contended that, inasmuch as the complainant could pay the tax and recover it back in an action at law, there was an adequate remedy, but, in discussing the question, the court again pointed out that, if the remedy at law be doubtful, a court of equity would take cognizance of the case; and further that, "if the equitable remedy was available in the state courts, it was not lost by suing in the federal courts," jurisdiction in the latter courts existing. See, also, Union Pacific R. R. Co. v. Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110, Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979, and Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878. It is of course immaterial here whether there is or is not available to complainants the right of an equitable action in the state courts to enjoin certification of the assessment, since there is jurisdiction in this court because of diversity of citizenship with the requisite amount involved, and also because of the constitutional grounds alleged; and clearly the party who is aggrieved has the right to choose the forum in which he will assert his claim.

In Greene v. Louisville & Interurban Ry. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, there was an assessment by the board of valuation and assessment, and the railroad company brought suit to restrain the certification of the assessment to the various taxing units of the state upon the ground that it was discriminatory. After holding that there was equity jurisdiction, not only to restrain the enforcement of an unconstitutional statute, but also unconstitutional acts done under a constitutional statute, the court pointed out that, although the state Constitution required that property be assessed at its full value, the duties of the assessing board under this provision of the Constitution must be considered in connection with other provisions of the Constitution of the state, one of which was to assess the property uniformly, and held that the failure to do the latter was a denial of the equal protection of the laws, and that the provision requiring assessment at full value must yield to the more compelling requirement of uniformity of taxation. Upon the showing made, the court enjoined the certification.

The very provision of the Constitution of the state of Ohio that requires the assessment of property at 100 per cent. of its value also requires uniformity of assessment, presenting a situation like that in the Greene Case, which, with Taylor v. L. & N. R. R. Co., 88 F.

(6 C. C. A.) 350, was referred to in the Sioux City Bridge Company Case, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979, where, in discussing the enforcement of uniformity clauses of state statutes and Constitutions and the equal protection clause of the Fourteenth Amendment, it was said: "Where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

[8, 9] Nor is there in our opinion any question here of judicial interference by injunction or otherwise with the discretion of executive officers of the government. Such cases as Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62, and Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 23 S. Ct. 698, 47 L. Ed. 1074, involve the discretion and judgment of executive officers of the Land Office, upon whom quasi judicial functions had been conferred. It is true, as stated in U. S. v. Fisher, 223 U. S. 683, 32 S. Ct. 356, 56 L. Ed. 610, State of Louisiana v. McAdoo, 234 U. S. 627, 34 S. Ct. 938, 58 L. Ed. 1506, and many other cases that might be cited, that neither injunction nor mandamus will lie against an executive officer to control him in discharging an official duty which requires the exercise of judgment and discretion. All of those cases have clearly recognized the distinction between acts involving discretion and judgment and those of a purely ministerial character. The latter, in so far as they affect the rights of citizens, are undoubtedly subject to the control of the courts. The tax commission of Ohio, upon hearing and rehearing, has finally assessed complainant's properties at their full value; it has no further discretion. Certification is purely a ministerial act. It is that act which complainants seek to enjoin, and we have no doubt that it is within the power of the court to enjoin it if its commission will result in irreparable injury.

It is admitted by defendants that complainants' properties have been assessed at full value. A preliminary showing has been made that other property in the state has been assessed at not exceeding 75 per cent. of its value. Upon this showing the commission has acted arbitrarily and with systematic discrimination in assessing complainants' property as compared with the valuation of other property in the state, in imposing an unequal burden of taxation upon complainants. Both bills aver willingness to pay taxes assessed on a valuation uniform with the assessed value of other property. In the nature of the case such taxes cannot be paid until there

have been certifications of the valuations. Payment of them, therefore, should not be made a condition of a preliminary injunction. Such an injunction may be issued in each case enjoining the tax commission from certifying more than 75 per cent. of the amount finally found by it to be the value of the complainants' property, upon each of the complainants giving bond, conditioned according to law, in the sum of $10,000.

MOORMAN, Circuit Judge, concurs in the result.

HICKENLOOPER, District Judge (dissenting). I am unable to concur in the holding of the majority of the court to the effect that these actions may be maintained against the tax commission of Ohio to enjoin the certification by the tax commission to the several county auditors, for tax purposes, of valuations placed upon the property of the complainants having a situs for taxation in Ohio.

It is of course now firmly established, and may be conceded, that, where intentional and systematic discrimination in valuation of property for tax purposes exists, "complainants may have the remedy by injunction in equity to prevent the taxation of their property at any higher rate than that imposed upon the property of those in whose favor the discrimination exists." Mr. Chief Justice Taft in Chicago G. W. Ry. Co. v. Kendall, 266 U. S. 94, 98, 45 S. Ct. 55, 57 (69 L. Ed. 183). It may also be conceded that, notwithstanding the affirmative duty placed on the tax commission of Ohio to so equalize valuations that all property within the state may be valued at "its true value in money," the tax commission must be charged with notice of systematic and intentional undervaluation in the whole or large parts of the state, and that such commission was thereby vested with power to equalize the valuation of complainants' property to conform to the insufficient valuation of the property of others. In the event of the commission's failure so to do, an unconstitutional burden of unequal taxation is cast upon the complainants, creating the right to relief in equity. Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903; Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 516, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Taylor v. L. & N. R. R. Co., 88 F. 350, 365 (C. C. A. 6).

Lastly, it may be conceded that the present cases have reached their justiciable stage in the sense that the complainants have exhausted all remedies given by statute before administrative tribunals. Whether the right of appeal to the court of common pleas be considered as administrative in its nature, so as to bring the present actions within the doctrine of Prentis v. Atlantic Coast Line R. Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288, Mellon Co. v. McCafferty, 239 U. S. 134, 36 S. Ct. 94, 60 L. Ed. 181, and Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 125, 42 S. Ct. 207, 66 L. Ed. 496, or constitutes provision for additional judicial remedy, is immaterial, and a decision of the question is unnecessary if, upon other grounds and for other reasons and in another distinct sense, the present actions have not reached their justiciable stage. Where a complainant has not exhausted the remedies provided before administrative tribunals, and the case is therefore said not to have reached its justiciable stage, relief is denied on the ground of lack of general equity jurisdiction because of the presumption of adequate remedy at law, viz., the appeal to the administrative tribunal. This question should not be confused with that which I believe is here presented.

Even conceding or concurring in the view expressed by the majority of the court, that in an appeal from the decision of the tax commission to the court of common pleas the court would have power only to determine the "true value in money" of the appellants' property and that no adequate remedy would therefore exist before statutory tribunals in a case of discriminatory undervaluation of the property of others, and that the case had thus reached its justiciable stage in this sense (City Railway Co. v. Beard, 283 F. 313, 322, D. C. So. Dist. of Ohio), I am constrained to the opinion that the general equity jurisdiction of the court is defeated at this stage of the administrative proceedings, for the reason that the assumption of such jurisdiction would amount to the direct control by the judicial branch of the government of the exercise of purely discretionary powers by the administrative branch. In this sense the case has not reached its justiciable stage.

"It has been repeatedly adjudged that the courts have no general supervising power over the proceedings and action of the various administrative departments of government." Mr. Justice Brewer in Keim v. United States, 177 U. S. 290, 292, 20 S. Ct. 574, 575 (44 L. Ed. 774). The very essence and sum total of the present complaints is that the tax commission has failed to exercise its power of equalization in the valuation of complainants' property and that discriminatory valuation thereby results. The sole and manifest purpose of

the present actions is to procure judicial review and supervision of the proceedings before the tax commission, and, by enjoining the certification of the valuations of the commission, to control and direct the administrative discretion and the method in which an administrative board shall perform its duties. This has uniformly been held to be beyond the power of courts of equity in all matters involving the exercise of discretionary powers, as this case does to the highest degree. Thus in Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 324, 23 S. Ct. 698, 701 (47 L. Ed. 1074), the court says:

"Neither an injunction nor mandamus will lie against an officer of the Land Department to control him in discharging an official duty which requires the exercise of his judgment and discretion [citing numerous cases]. * * * Whether he decided right or wrong, is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction. The court has no general supervisory power over the officers of the Land Department, by which to control their decisions upon questions within their jurisdiction. If this writ were granted we would require the Secretary of the Interior to repudiate and disaffirm a decision which he regarded it his duty to make in the exercise of the judgment which is reposed in him by law, and we should require him to come to a determination upon the issues involved directly opposite to that which he had reached, and which the law conferred upon him the jurisdiction to make."

The language of the court in the case of Gaines v. Thompson, 7 Wall. 347, 352 (19 L. Ed. 62), as early as 1868, would also seem peculiarly applicable to the present issues:

"* * * An officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, *after the matter has once passed beyond their control*, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law

reposes this discretion in him for that occasion, and not in the courts. The doctrine, therefore, is as applicable to the writ of injunction as it is to the writ of mandamus. In the one case the officer is required to abandon his right to exercise his personal judgment, and to substitute that of the court, by performing the act as it commands. In the other he is forbidden to do the act which his judgment and discretion tell him should be done. There can be no difference in the principle which forbids interference with the duties of these officers, whether it be by writ of mandamus or injunction." (Italics ours.)

Other applications of the same principle will be found in Bates & Guild Co. v. Payne, 194 U. S. 106, 24 S. Ct. 595, 48 L. Ed. 894; U. S. v. Fisher, 223 U. S. 683, 691, 692, 32 S. Ct. 356, 56 L. Ed. 610; State of Louisiana v. McAdoo, 234 U. S. 627, 633, 634, 34 S. Ct. 938, 58 L. Ed. 1506; Southern Mining Co. v. Lowe, 105 Ga. 352, 356, 31 S. E. 191; and U. S. Wood Preserving Co. v. Sundmaker, 186 F. 678 (C. C. A. 6). In the last case cited the Court of Appeals of this circuit refused an injunction against the letting of a contract on the ground that the duties of such executive involved the exercise of judgment and discretion; and in U. S. v. Fisher the court said:

"So, at the outset we are confronted with the question, not whether the decision of the Secretary was right or wrong, but whether a decision of that officer, made in the discharge of a duty imposed by law and involving the exercise of judgment and discretion may be reviewed by mandamus and he be compelled to retract it, and to give effect to another not his own and not having his approval. The question is not new, but has been often considered by this court and uniformly answered in the negative."

The cases in which the United States Supreme Court and other federal courts have applied this doctrine are literally legion, as may be seen by referring to Rose's Notes upon the case of Gaines v. Thompson, supra, or the even earlier case of Decatur v. Paulding, 14 Pet. 497, 10 L. Ed. 559, 609. Is there anything which differentiates the present situation from the situations covered by the forceful and plainly unambiguous language of the Supreme Court above quoted? Presumably the tax commission has exercised to some degree at least its powers of equalization. A prima facie case has been made that in so exercising its judgment and discretion the commission has erred and has been guilty of discrimination. This constitutes the only

fault which complainants find with the action of the commission. If the remedy sought by the complainants had been mandamus instead of injunction, to compel the tax commission to accept the views of the court as to the error and wrong thus committed and to substitute the personal judgment of the court for its decision upon questions within its jurisdiction (those of equalization), would any court grant such relief? The matters have clearly not yet passed beyond the control of the tax commission, and, in the language of Gaines v. Thompson, it would seem manifest that, "however the courts may, in ascertaining the rights of parties in suits properly [brought] before them, pass upon the legality of their acts, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action." And this would seem to adopt as the criterion, whether the matter has or has not passed beyond the control of the administrative body, and would likewise seem to dispose of the argument that if, having passed beyond administrative control, an injunction would issue thereon, no valid reason exists why such injunction may not issue at an antecedent stage of administrative proceedings.

It is suggested, argumentatively, that the act of certification is purely ministerial, that the several county auditors would have no choice but to place the valuation certified upon the tax duplicate, and to levy tax thereon, and that, if the collection of this discriminatory tax could be enjoined, courts of equity have power to enjoin the inevitable cause of such unconstitutional tax. The premises here submitted may support a conclusion of the equivalency of result, but they in no sense answer the objection that by its action the court is here deliberately intruding upon matters *still pending* before an administrative body and in fact controlling the action of such administrative body, equalizing valuations by reducing those of the complainants to 70 and 75 per cent., and thus usurping the sole jurisdiction of the commission. The fact that a remedy may exist *after* certification does not in the least degree operate *to create a remedy before* certification. This is emphasized by the fact that until certification no irrevocable step has been taken by the commission. The matter is still subject to the commission's discretion. The remedy at law still exists, although there is, as from the first, the danger that the commission will act unconstitutional-

ly. But, even if such danger probably impends, under the allegations of the present bills, and the relief sought be considered as purely preventative, it is clear that such relief must be sought in and by controlling the judgment of an administrative board.

It is also suggested argumentatively that, unless relief be granted in the present actions, the complainants will be driven to the necessity of bringing a multiplicity of suits against a large number of county auditors and treasurers or of bringing a single suit against a far larger number of defendants than here. The mere fact that the complainants' remedy must be asserted against a larger number of defendants (who may be sued separately by plaintiff, resulting in a multiplicity of actions, but who may also be joined in a single action under familiar principles of a bill of peace), would not seem to create jurisdiction as against different defendants, where such jurisdiction did not otherwise exist because of the nature of the relief sought. The existence of a multiplicity of causes of action may be ground for joining all the numerous county auditors and treasurers in one action to enjoin the collection of the tax, because of the existence of privity between them arising from the single source of valuation, but the mere fact that, unless equity jurisdiction is sustained in an action against the members of the tax commission to enjoin certification, the plaintiff will be driven to sue a larger number of wholly different defendants, to secure relief essentially different in its nature though not in its result, either in a single action or in a multiplicity of actions, cannot confer jurisdiction over a subject-matter with which, and as against defendants with whom, courts of equity have consistently refused to interfere. Such doctrine would seem to have been announced in Sanford v. Poe, 69 F. 546, 60 L. R. A. 641 (C. C. A. 6, 1895), but the matter was clearly not there considered in detail, and the doctrine would as clearly seem unsupported in theory under the Supreme Court decisions here quoted.

I am also familiar with the fact that the actions in the cases of Greene v. Louisville & Interurban R. R. Co., supra, and Chicago G. W. Ry. Co. v. Kendall, supra, were brought to enjoin the assessment for taxation of the property of the complainants by the executive council of the state, and that right to relief in equity by injunction was asserted upon the ground that, if the executive council certified their assessments and distributed them through all the counties through which the railways ran, it would entail on the compa-

nies a multiplicity of suits to vindicate their constitutional rights. The action being against the state boards, it was there considered as within the provisions of section 266 of the Judicial Code, but the main question of discriminatory valuation as ground for injunction alone was discussed. These opinions do not suggest that the attention of the court was directed either to the point of usurpation of and interference with the powers of an administrative board or the point whether the case was properly within the provisions of section 266. In neither case is either of these questions discussed or alluded to in the opinion, and I am constrained to the belief that neither case can be considered as authority upon either question.

It remains but to consider the decision and controlling effect of the opinion of Mr. Chief Justice Taft, then Circuit Judge, in the case of Western Union Telegraph Co. v. Poe (C. C.) 61 F. 449. This opinion would seem to be controlling only in the sense that it rejects as untenable the contention that the action was premature if brought before the tax was levied; i. e., if brought against the valuers and not against the collecting officers. Not only does the attention of the court not seem to have been directed to the question of interference with the performance of duties by administrative boards, but it is also to be noted that at that time (1894) no material difference in procedure arose from instituting action against the one or the other of the possible defendants. At the present time, under section 266 of the Judicial Code, the action must be presented to and determined by the statutory court of three judges if properly brought against the tax commission, while it is to be determined and decided by a single district judge if properly brought only against the county auditors and county treasurers. Connecting Gas Co. v. Imes, 11 F.(2d) 191; Connor v. Board of Commissioners, 12 F.(2d) 789 (both three-judge cases of this district). Under the procedure as it existed at the time of Judge Taft's decision, the balance of convenience and of equities would strongly impel a trial judge to disregard as hypertechnical a contention that a cause fully presented, argued, and submitted had been prematurely brought because instituted as against one officer rather than another. This is doubly so when, as pointed out, the only possible result of sustaining the contention would be to require the refiling and resubmission of the whole matter by the same parties, to the same court, in another later action. I cannot believe that the decision in

Western Union Telegraph Co. v. Poe was meant to or does sustain the doctrine that administrative boards may be controlled by injunction in the performance of their duties.

It is also interesting to note that, while it has been broadly held that injunction cannot be used to restrain public officers from performing any official act required of them by constitutional statute (Mendenhall et al. v. Denham et al., 35 Fla. 250, 17 So. 561; and cf. Willeford et al. v. State ex rel., 43 Ark. 62; Dickey v. Reed, 78 Ill. 261; Southern Oregon Co. v. Quine, 70 Or. 63–68, 139 P. 332; and Staples v. State [Tex. Civ. App.] 244 S. W. 1064–1071 [semble]), these cases are primarily based upon the threefold division of our state governments and the right of each to act within its own province, free from interference by the others, assuming the statute under which it acts is constitutional and not attacked. These cases are equally strong authority for the rule that it is only the ultimate result (the collection of the unconstitutional tax) and not the antecedent links in the chain of proceedings which may be enjoined.

Lastly, it is quite apparent that there could be no valid tender to the recipients of taxes, the county treasurers, prior to the certification of valuations and the ascertainment of the various tax rates. The mere allegation that the complainants stand ready to pay such taxes as are just and equitable will not supply the necessary averment of "payment or tender of the amount of taxes confessedly due, or at least [an] offer to pay such amount as the court may find to be justly and equitably due." Keokuk & Hamilton Bridge Co. v. Salm, supra, at page 126 (42 S. Ct. 208). The court is not a taxing body nor an apportioning body, nor can taxes be computed upon valuations in gross. The tax rate differs in all the various counties in which complainants have property, and the court will not undertake to direct the manner in which the apportionment shall be made and such proffered taxes paid. This difficulty it is said may be avoided by enjoining the tax commission from certifying in excess of 70 and 75 per cent., respectively, of the valuations. Prospectively this may be an avoidance, but it is not an answer to the indisputable fact that at the time the bills were filed no tax had been levied and there could be no offer to pay the amount confessedly due. Including a prayer for temporary injunction should not and does not affect the nature of the ultimate relief sought, and, the temporary injunction having issued, it is clear that no final settlement of

taxes in "such amount as the court may find to be justly and equitably due" can be made until the court has first ascertained the percentage of true value at which property in general is taxed in the state, equalized the valuation of complainants' property downward to this same percentage of true value, and then supervised, at least to the extent of procuring, apportionment of this decreased valuation among the several counties and certification to each. This demonstrates both that there can be no present tender of taxes confessedly due nor offer to pay the amount which the court may find due unless and until the court shall itself have equalized valuations and supervised apportionment and certification, and that in the latter event the court would be exercising highly discretionary powers vested exclusively in the commission.

It is true that, in an action to enjoin the collection of the tax, the court enters into an inquiry of the percentage of true value generally applied to other property for taxation purposes and enjoins the collection of all in excess of that percentage of the tax, but the matter has then left the tax commission, the court is not controlling the action of the commission as to a matter still before it, the inquiry of the court is purely incidental, and the action is no longer within the provisions of section 266. These latter considerations appear to me to be controlling.

I therefore feel that at the present stage of the proceedings the court is without power to grant the relief sought, whatever its powers might subsequently be to accomplish the same result; that, though certification itself may be a purely ministerial act, such certification causes no irreparable injury and does not constitute the substance of the complaint; that the true substance of the complaint is the failure of the commission to fully and correctly equalize valuations for taxation; that by the indirect course of enjoining certification the court is assuming jurisdiction to act in a purely administrative matter which is still pending before the commission; that it is idle to say that we are not usurping the discretionary powers of the commission when, before the end of the litigation, we must exercise or supervise all of these discretionary powers, especially that of equalization; that this is contrary to all principles of equity jurisdiction while the matter is still pending before the administrative body; and that the tender which constitutes the condition precedent to complainants' right of action has not and cannot be made. If the tax commission were dismissed and the several county auditors and treasurers joined as defendants, and the cause proceeded with as against the new defendants, the action would no longer be considered as within section 266 of the Judicial Code, as a three-judge case.